1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15
16
17

| | |
|---|---|
| GRANT ZASTROW, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>        v.<br><br>RUGSUSA, LLC<br><br>        *Defendant* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

18
19
20
21
22
23
24
25
26
27

CLASS ACTION COMPLAINT
Case No.

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Table of Contents

I.      Introduction. ........................................................................................................... 1

II.     Parties. .................................................................................................................... 2

III.    Jurisdiction and Venue. ....................................................................................... 2

IV.    Facts. ....................................................................................................................... 3

      A.      Defendant's fake sales and discounts. ........................................ 3

      B.      Defendant's purported regular prices were not the prevailing market prices............. 10

      C.      Defendant's advertisements violate Washington law. ................... 10

      D.      Defendant's advertisements harm consumers................................ 11

      E.      Plaintiff was misled by Defendant's misrepresentations. ........... 13

      F.      Defendant breached its contract with and warranties to Ms. Fitzgerald and the putative class.......................................................... 15

      G.      No adequate remedy at law. .......................................................... 16

V.      Class Action Allegations....................................................................................... 16

VI.    Claims...................................................................................................................... 18

      Count I: Violation of the Washington Consumer Protection Act: RCW Chapter 19.86 ........ 18

      Count II: Breach of Contract ............................................................................ 20

      Count III: Breach of Express Warranty......................................................... 21

      Count IV: Quasi-Contract/Unjust Enrichment ........................................... 21

      Count V: Intentional Misrepresentation ........................................................ 22

VII.   Jury Demand. ........................................................................................................ 23

VIII.   Prayer for Relief.................................................................................................... 23

CLASS ACTION COMPLAINT
Case No.

i

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## I. Introduction.

1.      Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive.  It is also unfair.  And, it violates Washington's consumer protection laws, which prohibit "[u]nfair methods of competition and unfair or deceptive acts or practices."  *See* Wash. Rev. Code Ann. § 19.86.020.

3.      Defendant RugsUSA, LLC ("Defendant" or "RugsUSA") sells and markets rugs and home accessory products online through the RugsUSA brand and website, www.rugsusa.com ("RugsUSA Products" or "Products").  It sells its products using fake sales, and has used fake sales for years.  Consumers buy RugsUSA products believing that they are getting a discount—when in fact they are not.

4.      RugsUSA uses fake sales despite knowing that this is illegal and misleading.  RugsUSA was already sued for using fake sales last year.  It settled that case, and then resumed using fake sales again.  Today, RugsUSA continues to use illegal fake sales.  They continue to mislead consumers into believing that they are getting a sale price—when in fact consumers are paying full price.

5.      As described in greater detail below, Mr. Zastrow bought a RugsUSA rug from Defendant from its website, www.rugsusa.com.  Like Defendant's other customers, when Mr. Zastrow made his purchase, Defendant advertised that a limited-time sale was going on, and so Defendant represented that the Product Mr. Zastrow purchased was being offered at a steep discount from its purported regular price that Defendant advertised in strikethrough font.  And based on Defendant's representations, Mr. Zastrow believed that he was purchasing a Product whose regular price and market value were the purported list price that Defendant advertised, that he was receiving a substantial discount, and that the opportunity to get that discount was time-limited.  These reasonable beliefs are what caused Mr. Zastrow to buy from Defendant when he did.

CLASS ACTION COMPLAINT
Case No.
1
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

6. In truth, however, the representations Mr. Zastrow relied on were not true. The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited. Had Defendant been truthful, Mr. Zastrow and other consumers like him would not have purchased the Products, or would have paid less for them.

7. Mr. Zastrow brings this case for himself and the other customers who purchased Defendant's Products.

## II. Parties.

8. Plaintiff Grant Zastrow is domiciled in Seattle, Washington.

9. The proposed class includes citizens of every state.

10. Defendant RugsUSA, LLC is a Delaware company with its principal place of business at 8 Santa Fe Way, Cranbury, NJ 08512.

## III. Jurisdiction and Venue.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12. This Court has personal jurisdiction over Defendant. Defendant does business in Washington. It advertises and sells its Products in Washington, and serves a market for its Products in Washington. Due to Defendant's actions, its Products have been marketed and sold to consumers in Washington, and harmed consumers in Washington. Plaintiff's claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Plaintiff purchased Defendant's Product in Washington, and was harmed in Washington.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state. Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

CLASS ACTION COMPLAINT
Case No.

2

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**IV.    Facts.**

   **A.    Defendant's fake sales and discounts.**

14.    Defendant manufactures, distributes, markets, and sells rugs and home accessory products, including but not limited to, area rugs, rug pads, and floor mats.  Defendant sells its Products directly to consumers through its website, www.rugsusa.com.

15.    Defendant has used fake sales to sells its products for years.

16.    In April 2023, RugsUSA was sued in California for misleading customers with its fake sale practices.[1]  Lawsuits in other states followed.  Plaintiffs in the other cases were represented by Plaintiff's counsel in this case.  In February 2024, the parties settled, with RugsUSA ultimately paying over $14 million dollars into a class common fund.[2]

17.    But even after being sued and settling that case, RugsUSA continued to use fake sales, and continues its practice of using fake sales today.  This includes using fake strikethrough prices, fake sitewide sales, and "limited time" sales that are continuously available.

18.    At any given time, on its website, Defendant advertises steep discounts on its Products.  Even though in truth these discounts run in perpetuity, Defendant prominently claims that they are "LIMITED TIME ONLY."  And it advertises these discounts extensively: on an attention-grabbing banner near the top of its website; in a large banner image on its homepage; on the products listing pages; on the individual product pages for each Product, and on the checkout pages.  It advertises them by touting "X% off"; by advertising list prices in strikethrough font next to lower, purported discount prices; with slogans such as "20% Off" in attention-grabbing, red font next to product descriptions; and by identifying the supposed savings that customers are supposedly receiving by expressing the supposed full purchase price, in strikethrough font, during checkout.  Example screenshots are provided on the following pages:

---

[1] *See, e.g., Dray v. RugsUSA*, No. 2:23-cv-3017 (C.D. Cal. April 21, 2023) (complaint).
[2] The class members for that settlement included purchaser from certain states, including Washington, that had purchased RugsUSA products on or before October 12, 2023.



*Captured on October 28, 2023*



*Captured on December 24, 2023*

CLASS ACTION COMPLAINT
Case No.

4

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066



*Captured on February 13, 2024*



*Captured on April 17, 2024*



*Captured on July 11, 2024*



*Captured on August 9, 2024*

*Captured on September 11, 2024*

CLASS ACTION COMPLAINT
Case No.

5

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066



*Captured on October 8, 2024*

*Captured on April 18, 2024*



CLASS ACTION COMPLAINT
Case No.

6

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

*Captured on April 17, 2024*



**EXTRA 20% OFF WITH CODE FALL20 (YOU PAY $28.76) – ENDS IN 1D 5H 37M 29S**

*Captured on October 8, 2024*

16    19.    Defendant represents that these discounts will only be available for a limited time, but in

17  reality, they continue indefinitely.  For example, as depicted below, Defendant represents that its sales

18  expire on a particular date, for example: "ENDS In 8h 36m 37s."  To reasonable consumers, this means

19  that after the specified date, Defendant's Products will no longer be on sale and will retail at their

20  purported list price.  But immediately after each purportedly time-limited sale ends, Defendant generates

21  another similar or identical discount, with a new expiration date.

22    20.    For example, on July 8, 2024 Defendant advertised a purportedly time-limited sale

23  "END[ING] TONIGHT!"

24
25
26
27



*Captured on July 8, 2024*

21.     However, on July 9, 2024, the day that the time-limited sale was supposed to have ended, Defendant advertised another "limited time" sale.

*Captured on July 9, 2024*

22.     Defendant advertises that to obtain the supposed discount, consumers must enter a promo code. But the promo code is prominently advertised throughout Defendant's website, including on a banner on every page of the website, on product pages, on search pages, and during checkout. It is also prominently advertised at the top of the checkout cart. And, it is automatically applied to the order, even if the consumer does not enter it. So, the overwhelming majority (if not all) of Defendant's sales are made at the advertised discount price (and not the supposedly regular list price), notwithstanding the supposed need to enter a promo code to get the advertised discount.

23.     Through its fake discount scheme, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

24.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices (that is, the prices at which the Products ordinarily or typically retail for), and its former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect).  In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers usually have to pay for Defendant's goods, formerly had to pay for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the list price to get the item and did not have the opportunity to get a discount from that list price; and that they will have to pay the list price again once the supposedly time-limited sale is over.

25.     Reasonable consumers also reasonably believe that the list prices that Defendant advertises represent Defendant's regular prices, and the true market value of the Products, and that they are the prevailing prices for those Products.  Reasonable consumers also believe that they are receiving reductions from Defendant's regular prices, former prices, and the market value of the Products in the amounts advertised.  Said differently, reasonable consumers reasonably believe that, if they buy now, they will receive a price reduction from the price at which Defendant ordinarily and typically sells its Products; a price reduction from Defendant's former prices; and a price reduction from the Products' market value.  In truth, however, Defendant consistently, if not perpetually, offers purported reductions off the list prices it advertises.  As a result, everything about Defendant's price and purported discount advertising is false.  The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that, and

1    customers did not have to formerly pay that amount to get those items.  The purported discounts

2    Defendant advertises are not the true discount the customer is receiving.  Nor are the purported

3    discounts "LIMITED TIME ONLY"—quite the opposite, they are almost always, if not always,

4    available.

5    **B.    Defendant's purported regular prices were not the prevailing market prices.**

6    26.    Defendant is the manufacturer of the Products and the vast majority if not all of the

7    Products' sales are sold by Defendant directly to consumers (at a purportedly discounted price).  If a

8    consumer is searching for RugsUSA Products, they will go to Defendant's website.  For example,

9    searching on Google for "RugsUSA" overwhelmingly returns results for Defendant including

10    Defendant's website, and its social media pages.  As the primary (or only) seller of the Products,

11    Defendant sets the prevailing market price: most or all sales are made at Defendant's prices, because

12    Defendant is the one making the sales.

13    27.    In short, because the Products are most commonly or exclusively sold by Defendant,

14    they are most commonly sold for the discounted prices that are always available from Defendant (across

15    all Defendant's sales channels).

16    **C.    Defendant's advertisements violate Washington law.**

17    28.    Washington's Consumer Protection Law prohibits "[u]nfair methods of competition and

18    unfair or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code Ann.

19    § 19.86.020.  An act is unfair if "(1) it causes or is likely to cause substantial injury that (2) consumers

20    cannot avoid and that (3) is not 'outweighed by countervailing benefits" to consumers or competition.

21    *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 628 (2017).  And an act is deceptive if it

22    constitutes "a representation, omission or practice that is likely to mislead a reasonable consumer."

23    *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 50 (2009).

24    29.    Defendant's fake discount scheme is unfair.  As discussed above, Defendant advertises

25    fake discounts and false regular prices that induce consumers to purchase its Products and cause them

26    substantial economic injury.  Reasonable consumers, who rely on Defendant to provide accurate and

27    truthful information about sales and pricing, cannot reasonably avoid this injury.  And Defendant's fake

discounts offer no countervailing benefits—misrepresenting products' prices harms both consumers and honest competition.

30.    Defendant's fake discount scheme is also deceptive.  As described above, reasonable consumers understand Defendant's advertised time-limited discounts to mean that Products are on sale for less than its regular prices for a limited period of time.  But, as explained above, this is not true: the advertised discounts are fake, the Products are never sold at the purported regular prices, and the sales are not limited in time.

31.    The Federal Trade Commission's regulations on pricing confirm that Defendant's fake discount scheme is unfair and deceptive.  The regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.2.

32.    So, Defendant's business practices are deceptive, unfair, and fraudulent and are therefore banned by Washington law.

**D.    Defendant's advertisements harm consumers.**

33.    Based on Defendant's advertisements, reasonable consumers expect that Defendant's regular prices (the prices without the advertised discounts) are former prices at which Defendant actually sold its Products before the discounts were introduced for a limited time; that they are the prevailing prices for the Products; and that they represent the true market value of the Products.

34.    Reasonable consumers also expect that, if they purchase during the sale, they will receive (at a discount) Products whose market value is the regular, non-discounted price.  For example, for items that are purportedly 20% off, reasonable consumers would expect that they are receiving a 20% discount as compared to the regular price, and that the items have a market value of 20% more than what they are spending.

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

35.     As explained above, however, Plaintiff and class members' reasonable expectations were not met.  Instead of receiving Products with a market value equal to the alleged regular prices, they received items worth less.  In addition, instead of receiving a significant discount, Plaintiff and the class received little or no discount.  Thus, Defendant's false advertisements harm consumers by depriving them of the reasonable expectations to which they are entitled.

36.     In addition, consumers are more likely to buy a product, and buy more of it, if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

37.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

38.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

39.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases they otherwise would not have made, based on false information.  In addition, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**E.    Plaintiff was misled by Defendant's misrepresentations.**

40.    On September 14, 2024, Mr. Zastrow purchased a Premium Rug Pad and Arrel Speckled Wool-Blend Rug from Defendant's website, www.rugsusa.com.  He made this purchase while living in Seattle, Washington.

41.    On September 13, 2024, Defendant represented on its website that a time-limited, "Extra 20% Off Everything!" sitewide sale was running, which continued through the date of Mr. Zastrow's purchase, and that the sale applied to Mr. Zastrow's order:



*Captured September 13, 2024*

42.    Defendant also represented that the list price of the Products that Mr. Zastrow purchased was $147.99 for the Premium Rug Pad and $832.95 for the Arrel Speckled Wool-Blend Rug, and that Mr. Zastrow was receiving a discount of $196.19 off the total order.  Defendant confirmed this in an order confirmation email it sent to Mr. Zastrow.  Defendant represented that the discount price was $784.75, and that Mr. Zastrow was receiving "20% Off" by using the code "REFRESH":

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Premium Rug Pad | Grey - 9' x 12'

Quantity: 1
Total: $147.99

Arrel Speckled Wool-Blend Rug | Brick - 9' x 12'

Quantity: 1
This Item Will Ship 09/22/24 - 09/26/24
Total: $832.95

Discount (code: REFRESH): $-196.19
Subtotal: $784.75
WA STATE TAX: $51.01
WA CITY TAX: $30.21
Shipping: $0.00
Total: $865.97

43.     So, Defendant represented that the Products had a certain regular price and that Mr. Zastrow was receiving a substantial discount for the items that he purchased.

44.     Mr. Zastrow read and relied on Defendant's representations on Defendant's website and email confirmation, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that he would be receiving a price reduction by buying when he did.  Based on Defendant's representations described and shown above, Mr. Zastrow reasonably understood that the Products he was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list prices, that these published list prices were the market value of the Product that he was buying; that he was receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion).  He would not have made the purchase if he had known that the Product was not discounted as advertised, and that he was not receiving the advertised discount.

45.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase discounted RugsUSA Products from Defendant again in the future if he could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the Products,

1   and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know

2   which—if any—of Defendant's list prices, discounts, and sales are not false or deceptive. For example,

3   while he could watch a sale on the day that it is supposed to end to see if the sale is permanent, doing so

4   could result in him missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent).

5   Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase

6   the Products he would like to purchase.

   **F.     Defendant breached its contract with and warranties to Mr. Zastrow and the**
   **putative class.**

9   46.     When Mr. Zastrow and other members of the putative class purchased and paid for the

10  Products they bought as described and shown above, they accepted offers that Defendant made, and

11  thus, a contract was formed at the time that he made a purchase. The offer was to provide Products

12  having a particular listed regular price and market value, and to provide those Products at the discounted

13  price advertised.

14  47.     Defendant's website, price quotes, and email confirmations list the market value of the

15  items that Defendant promised to provide, regardless of the sales channel used to make the purchase.

16  Defendant agreed to provide a discount equal to the difference between the regular price listed by

17  Defendant, and the price paid by Mr. Zastrow and putative class members. For example, Defendant

18  offered to provide to Mr. Zastrow a Premium Rug Pad and Arrel Speckled Wool-Blend Rug with a

19  regular price and market value of $147.99 and $832.95, for a discounted price of $784.75; and to provide

20  a discount of $196.19. Defendant also warranted that the regular price and market value of the Products

21  Mr. Zastrow purchased were the amount they identified as the list prices ($147.99 and $832.95) and

22  warranted that Mr. Zastrow was receiving a discount of $196.19 on the Products.

23  48.     The regular price and market value of the item Mr. Zastrow and the putative class

24  members would receive, and the amount of the discount they would be provided off the regular price of

25  the item, were specific and material terms of the contracts, and by failing to provide the discounts and

26  price reductions it promised, in the amounts promised. They were also affirmations of fact about the

27  Products and a promise relating to the goods.

49.    Mr. Zastrow and other members of the putative class performed their obligations under the contracts by paying for the items they purchased.

50.    Defendant breached its contracts by failing to provide Mr. Zastrow and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.  Defendant also breached warranties for the same reasons.

**G.    No adequate remedy at law.**

51.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

52.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.

53.    In addition, to obtain a full refund as damages, Plaintiff must show that the Products he bought has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased Products that he would not otherwise have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain than obtaining a refund in equity.

54.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.    Class Action Allegations.**

55.    Plaintiff brings the asserted claims on behalf of a proposed class of all persons who, while in the state of Washington and within the applicable statute of limitations period, purchased one or more Products advertised at a discount on or after October 13, 2023 (the "Class").

56.    Plaintiff reserves the right to amend the definitions of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

CLASS ACTION COMPLAINT
Case No.

16

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

57.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

58.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

59.     Class members can be identified through Defendant's sales records and/or public notice.

### Predominance of Common Questions

60.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated Washington's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

61.     Plaintiff's claims are typical of the proposed class.  Like all members of the proposed class, Plaintiff purchased the Products advertised at a discount.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be

1  unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits,

2  every one of which would present the issues presented in this lawsuit.

3  **VI.    Claims.**

4         **Count I: Violation of the Washington Consumer Protection Act: RCW Chapter 19.86**

5                                    **(By Plaintiff and the Class)**

6         63.    Plaintiff incorporates each and every factual allegation set forth above.

7         64.    Plaintiff brings this cause of action on behalf of himself and members of the Class.

8         65.    Defendant has violated the Washington Consumer Protection Act (CPA), RCW Chapter

9  19.86.

10        66.    Section 19.86.020 of the CPA states, "[u]nfair methods of competition and unfair or

11  deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

12  RCW § 19.86.020.

13        67.    Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual

14  damages, costs, and a reasonable attorney's fee.  A private plaintiff may be eligible for treble damages,"

15  and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own

16  rights."  Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—

17  Introduction) (internal citations omitted); RCW § 19.86.090.

18        68.    Defendant engages in the conduct of trade or commerce within the meaning of the

19  CPA.  Defendant does this by selling window covering products in a manner that directly and indirectly

20  affects people of the state of Washington.

21        69.    As alleged more fully above, Defendant made and disseminated untrue and misleading

22  statements of facts in its advertisements to class members, constituting acts of unfair methods of

23  competition and/or unfair or deceptive acts or practices.

24        Unfair Acts or Practices

25        70.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that

26  its Products were on sale, that the sale was limited in time, that the Products had higher regular prices,

27  and market values and that customers were receiving discounts, when none of this was true.  This

caused Plaintiff and the class to make purchases they otherwise would not have made, pay more for their purchases, and deprived them of their expectancy interest in receiving the Products as advertised.

71.    The harm to Plaintiff and the class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product.  Plaintiff and the class's injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

Deceptive Acts or Practices

72.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

73.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and other reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

74.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Product.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

75.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

76.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the class.

77.    Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

78.    Defendant's acts or omissions are injurious to the public interest because these practices were committed in the course of Defendant's business and were committed repeatedly before and after Plaintiff purchased Defendant's Product.  They are part of a pattern of unfair and deceptive advertisements.  These actions have injured other persons, and, if continued, have the capacity to injure additional persons.

### Count II: Breach of Contract

### (By Plaintiff and the Class)

79.    Plaintiff incorporates each and every factual allegation set forth above.

80.    Plaintiff brings this cause of action on behalf of himself and the Class.

81.    Plaintiff and class members entered into contracts with when they placed orders to purchase Products from Defendant.

82.    The contracts provided that Plaintiff and class members would pay Defendant for the Products ordered.

83.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a former price, and a market value, equal to the advertised regular prices.  They also required that Defendant provide Plaintiff and the class members with the advertised specific discount. These were specific and material terms of the contracts.

84.    Plaintiff and class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

85.    Defendant breached the contracts with Plaintiff and class members by failing to provide Products that had a regular price and market value equal to the advertised list price, and by failing to provide the promised discounts.

86.    Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters, on November 22, 2024.

87.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

CLASS ACTION COMPLAINT
Case No.
20
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

### Count III: Breach of Express Warranty

**(By Plaintiff and the Class)**

88.    Plaintiff incorporates each and every factual allegation set forth above.

89.    Plaintiff brings this cause of action on behalf of himself and the Class.

90.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the advertised regular price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

91.    Defendant also issued material, written warranties by representing that the Products were being sold at an advertised discounted price. This was an affirmation of fact about the Products and a promise relating to the goods.

92.    These warranties were part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

93.    In fact, the Products did not have a market value equal to the purported regular prices. And the Products were not actually sold at the advertised discounts. Thus, the warranties were breached.

94.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on November 22, 2024.

95.    Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

### Count IV: Quasi-Contract/Unjust Enrichment

**(By Plaintiff and the Class)**

96.    Plaintiff incorporates each and every factual allegation set forth in paragraphs 1-45 and 51-62 above.

CLASS ACTION COMPLAINT
Case No.

21

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

97.     Plaintiff brings this cause of action in the alternative to his Breach of Contract claim (Count II) and Breach of Express Warranty claim (Count III), on behalf of himself and the Class.

98.     As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase the Products and to pay a price premium for these Products.

99.     In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

100.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff are void or voidable.

101.    Plaintiff and the class seek restitution, and in the alternative, rescission.

## **Count V: Intentional Misrepresentation**

### **(By Plaintiff and the Class)**

102.    Plaintiff incorporates each and every factual allegation set forth above.

103.    Plaintiff brings this cause of action on behalf of himself and members of the Class.

104.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the existence and/or nature of the advertised discounts and savings.

105.    These representations were false.

106.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

107.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

108.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

109.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

110.    Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the

representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## VII. Jury Demand.

111.    Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. Prayer for Relief.

112.    Plaintiff seeks the following relief for himself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, treble damages, and punitive damages where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Dated:        March 17, 2025              Respectfully submitted,

By: */s/ Wright A. Noel*

Wright A. Noel, WSBA No. 25264
20 Sixth Ave. NE
wright@carsonnoel.com
Issaquah WA 98027
Telephone: (425) 395-7786
Facsimile: (425) 837-5396

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon C. Franzini (Cal. Bar No. 287631)*
simon@dovel.com

Jonas Jacobson (WA 62890)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

**BURSOR & FISHER, P.A.**
Julian Diamond *
jdiamond@bursor.com
Matthew Girardi *
mgirardi@bursor.com
1330 Avenue of the Americas, Floor 32
New York, NY  10019
Telephone: (646) 837-7150

*\* Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT
Case No.

24

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066